1 | Denis J. Moriarty (Bar No. 106064)
    *dmoriarty@hbblaw.com*
2 | Gary L. LaHendro (Bar No. 169033)
    *glahendro@hbblaw.com*
3 | HAIGHT BROWN & BONESTEEL LLP
    555 South Flower Street, Forty-Fifth Floor
4 | Los Angeles, California 90071
    Telephone: 213.542.8000
5 | Facsimile: 213.542.8100

6 | Attorneys for Plaintiffs, CERTAIN
    UNDERWRITERS AT LLOYD'S,
7 | LONDON, SUBSCRIBING TO
    FOLLOW FORM EXCESS LIABILITY
8 | POLICY NO. PH1706285; AND
    CERTAIN UNDERWRITERS AT
9 | LLOYD'S, LONDON, SUBSCRIBING
    TO FOLLOW FORM EXCESS
10 | LIABILITY POLICY NO. PH1706286

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO FOLLOW FORM EXCESS LIABILITY POLICY NO. PH1706285; AND CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO FOLLOW FORM EXCESS LIABILITY POLICY NO. PH1706286, | Case No. 2:22-cv-3184 **COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION** |
| Plaintiffs, | |
| v. | |
| UNIVERSITY OF SOUTHERN CALIFORNIA; GEORGE TYNDALL, M.D., an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Haight

Plaintiffs, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO FOLLOW FORM EXCESS LIABILITY POLICY NO. PH1706285 ("Underwriters 285") and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO FOLLOW FORM EXCESS LIABILITY POLICY NO. PH1706286 ("Underwriters 286") (collectively, "Underwriters") allege their complaint against the UNIVERSITY OF SOUTHERN CALIFORNIA ("USC"), GEORGE TYNDALL, M.D. ("Tyndall") and DOES 1 through 10, inclusive, (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1.      Plaintiff, Underwriters 285, is and at all relevant times was an insurance syndicate duly organized and existing under the laws of the United Kingdom, is domiciled in London, England, and is a citizen of England.

2.      Plaintiff, Underwriters 286, is and at all relevant times was an insurance syndicate duly organized and existing under the laws of the United Kingdom, is domiciled in London, England, and is a citizen of England.

3.      Defendant, USC, is a California corporation that has its principal place of business in Los Angeles County, California, and is a citizen of the State of California.

4.      Defendant, Tyndall, is a citizen of the State of California, residing in Los Angeles County, California.

5.      This case involves two insurance policies.  One of the policies has a $20,000,000 limit of liability and the other policy has a $10,000,000 limit of liability.  Both policies are in dispute in this case.

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the dispute is between citizens of a state within the United States and citizens of a foreign country, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Venue in this district is appropriate because Defendants reside in this district and a substantial part of the events giving rise to this action occurred in this district. 28 U.S.C. § 1391(b).

## **PARTIES**

7.     Plaintiff, Underwriters 285, is and at all relevant times was an insurance syndicate duly organized and existing under the laws of the United Kingdom and registered and licensed to do business in the State of California. Underwriters 285 is in the business of issuing insurance policies and providing coverage related to excess liability insurance, among other types of insurance.

8.     Plaintiff, Underwriters 286, is and at all relevant times was an insurance syndicate duly organized and existing under the laws of the United Kingdom and registered and licensed to do business in the State of California. Underwriters 286 is in the business of issuing insurance policies and providing coverage related to excess liability insurance, among other types of insurance.

9.     Defendant, USC, is a California corporation, located at 3551 Trousdale Parkway, ADM 352, Los Angeles, California 90089.

10.    Defendant, Tyndall, is a natural person and resident of Los Angeles, California.

11.    The true names and capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 10, are unknown to Underwriters, who therefore sue said Defendants by such fictitious names.  Underwriters are informed and believe and thereon allege that each of the Defendants sued herein as DOE is legally responsible in some manner for the events referred to herein.  Underwriters will request leave of this Court to amend their complaint to insert the true names and capacities of the DOES in place of the fictitious names when the same becomes known.

///

///

**INTRODUCTION**

12.     By way of this action, Underwriters seek to resolve coverage disputes under two excess liability insurance policies that Underwriters issued to USC with respect to underlying federal and state lawsuits filed against USC and Tyndall, as well as a related settlement arising out of certain underlying lawsuits filed against them in the United States District Court for the Central District of California and consolidated in *In Re USC Student Health Center Litigation*, Case No. 2:18-cv-04258-SVW-GJS (the "Federal Settlement").  According to the plaintiffs in the underlying lawsuits, Tyndall, a gynecologist employed by USC, sexually abused, molested, assaulted or otherwise acted inappropriately toward them.  They also allege USC ratified and failed to act to protect them by allowing Tyndall to stay in his position at the Engemann Student Health Center, even though he was unfit to treat patients (the "Underlying Lawsuits").

13.     Underwriters are not obligated to afford any benefits under the excess insurance policies to Defendants for the Underlying Lawsuits or the Federal Settlement because neither constitutes a covered **Claim** under the excess insurance policies, as Defendants had knowledge prior to the excess insurance policies' effective date of facts or circumstances that would cause a reasonable person to believe that a **Claim** might be made against them.

14.     USC concealed from Underwriters that it forced Tyndall to resign following a USC investigation that concluded in January 2017 that Tyndall violated USC's policies on race and sexual harassment and failed to meet medical standards in his interactions with patients.  Despite USC's knowledge of the complaints and allegations made against Tyndall by patients, medical assistants and nurses, and despite its own findings, USC failed to disclose such to Underwriters in violation of California Insurance Code §§ 330 and 332.  Had Underwriters known of the patient and employee complaints and allegations, as well as USC's investigation and findings therefrom, Underwriters would not have provided insurance to Defendants

1  on the same terms and would have expressly excluded from coverage claims arising
2  out of Tyndall's alleged misconduct.

3      15.    Underwriters are informed and believe Defendants dispute
4  Underwriters' position and contend that the excess insurance policies afford them
5  coverage for the Underlying Lawsuits and the Federal Settlement.  Underwriters
6  therefore seek judicial declarations that they are not obligated to provide insurance
7  benefits to Defendants under the excess insurance policies for the Underlying
8  Lawsuits or the Federal Settlement, or for any other similar and/or related claim(s)
9  that has been or may be asserted in other state or federal lawsuits, or otherwise.

10     16.    Underwriters 285 also seeks reimbursement from Defendants of its
11 $20,000,000 payment toward the Federal Settlement, which Underwriters 285 paid
12 under a full reservation of rights, including the right to reimbursement of non-
13 covered claims.

14     17.    Underwriters also seek to rescind the two excess insurance policies that
15 Underwriters issued to USC.

16                        **THE INSURANCE POLICIES**

17     18.    Underwriters 285 issued Follow Form Excess Liability Policy No.
18 PH1706285 to USC for the policy period July 1, 2017 to July 1, 2018, with a limit
19 of liability of $20,000,000 for each loss or medical incident and an annual aggregate
20 limit of liability of $20,000,000, in excess of $60,000,000 each loss or medical
21 incident and a $70,000,000 annual aggregate limit of liability ("Excess Policy 285").
22 Attached hereto as **Exhibit A**, and incorporated herein by this reference, is a copy of
23 Excess Policy 285.

24     19.    Underwriters 286 issued Follow Form Excess Liability Policy No.
25 PH1706286 to USC for the policy period July 1, 2017 to July 1, 2018, with a limit
26 of liability of $10,000,000 for each loss or medical incident and an annual aggregate
27 limit of liability of $10,000,000, in excess of $110,000,000 each loss or medical
28 incident and a $120,000,000 annual aggregate limit of liability ("Excess Policy

Haight

286"). Underwriters 286 does not bring this action on behalf of Lloyd's Syndicate XL Catlin XLC 2003, which is also a subscriber to Follow Form Excess Liability Policy No. PH1706286. Attached hereto as **Exhibit B**, and incorporated herein by this reference, is a copy of Excess Policy 286.

20.     Excess Policy 285 and Excess Policy 286 shall be collectively referred to herein as the "Underwriters Policies."

21.     The Underwriters Policies were the first healthcare professional liability insurance policies that Underwriters issued to USC.

22.     The Underwriters Policies provide in relevant part:

INSURING AGREEMENTS:

I - COVERAGE

The Insurers hereby agree, subject to the limitations, terms

and conditions hereinafter mentioned, to indemnify the

Insured for all sums which the Insured shall be obligated

to pay by reason of the liability caused by or arising out of

the coverages covered by and as more fully defined in the

Followed Policy No. issued by BETA Healthcare Group.

***

CONDITIONS

1.     MAINTENANCE OF UNDERLYING INSURANCE

This Policy is subject to the same terms, definitions,

exclusions, conditions and extensions (except as regards

the premium, the amount and limits of liability and except

as otherwise provided herein) as are contained in or as

may be added to the Followed Policy prior to a claim

being made hereunder. Provided always that this Policy

shall not apply until the Underlying Insurers have paid or

have been held liable to pay the full amount of their

1    respective Policy liability in accordance with Insuring

2    Agreement II.

3        23.    The Underwriters Policies identify the "Followed Policy Insurer(s)" as

4    BETA Risk Management Authority and the "Followed Policy No." as HCL-17-807

5    (the "BETA Policy").  Attached hereto as **Exhibit C**, and incorporated herein by this

6    reference, is a copy of the BETA Policy.

7        24.    Underwriters are informed and believe, and thereon allege, that USC is

8    and was a Named Member of the BETA Risk Management Authority at all times

9    relevant to this Complaint.

10       25.    The BETA Policy provides healthcare entity professional liability

11   coverage.  Section 2 of the BETA Policy, titled HEALTHCARE ENTITY

12   PROFESSIONAL LIABILITY, states "(This coverage is provided on a claims made

13   and reported basis)" and provides in relevant part:

14       1.    BETArma will pay those sums which the **Member**

15   is legally required to pay as damages for a **Claim**

16   for **Bodily Injury**, **Property Damage** or **Economic**

17   **Damages** arising out of the **Member's** negligence

18   in the rendering of, or failure to render,

19   **Professional Services**:

20   A.    on or after the **Retroactive Date**; and

21   B.    at a **Covered Location**; and provided that

22   C.    the **Claim** is first made against the **Member**

23   during the **Contract Period** and is reported in

24   writing to BETArma as soon as possible

25   during the **Contract Period** but in no event

26   later than thirty (30) calendar days after

27   termination of the **Contract Period**.

28

Haight

Haight

2.    BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising from a negligent act, error or omission resulting in actual or alleged denial, suspension, revocation, termination or limitation of medical staff privileges, provided that the effective date of the first denial, suspension, revocation, termination or limitation of staff privileges that is a basis of the **Claimant's Claim** occurs on or after the **Retroactive Date**.  This coverage applies only if the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETArma as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**. BETArma will defend, but will not indemnify, a **Claim** that is otherwise covered under this Section, but alleges an intentional act, error or omission.

***

4.    BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising out of the following offenses:

A.    discrimination based upon, without limitation, an individual's race, ethnicity, ancestry, national origin, citizenship, religion, age, sex, sexual orientation or preference, pregnancy, preexisting medical condition, physical or mental disability or handicap, insurance

status, economic status or ability to pay for

medical services; and

B.     sexual abuse, assault, battery, harassment or

molestation

if the **Claimant's** injury arises out of the **Member's**

negligence in rendering of, or failure to render,

**Professional Services** on or after the **Retroactive**

**Date**; and at a **Covered Location**; and provided that

the **Claim** is first made against the **Member**

during the **Contract Period** but in no event

later than thirty (30) calendar days after

termination of the **Contract Period**.

BETArma will defend, but will not indemnify, a

**Claim** that is otherwise covered under this Section,

but alleges an intentional act or omission.

26.     The BETA Policy defines **Member** to include USC and any physician employed or formerly employed by USC, "but only with respect to his or her legal liability when acting within the course and scope of his or her duties" to USC and only to the extent that USC "is permitted or required by law to indemnify him or her."

27.     The BETA Policy defines a **Claim** to include a "written demand for damages," including service of a suit against a **Member**.

28.     The BETA Policy further provides in Section 1, Paragraph 5 that "[t]wo or more **Claims** arising out of a single **Occurrence** or an act, error, omission or offense or a series of related **Occurrences**, acts, errors, omissions or offenses shall be treated as a single **Claim**.  **Occurrences**, acts, errors, omissions and offenses are related if they share a causal connection or have as a common nexus any event or transaction or series of events or transactions. When two or more **Claims** are treated

as a single **Claim**, the single **Claim** shall be considered first made when the earliest of the **Claims** is first made." However, "no **Claim** shall be deemed first made during the **Contract Period** if: C. the **Claim** or incident was reported before the Effective Date of this Contract to BETArma or to any liability insurer; or D. any **Member** had knowledge prior to the Effective Date of facts or circumstances that would cause a reasonable person to believe that a **Claim** might be made."

29.   The BETA Policy defines the **Contract Period** as July 1, 2017 to July 1, 2018.

30.   The Effective Date of the BETA Policy is July 1, 2017.

31.   The BETA Policy defines **Bodily Injury** as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these," and includes "mental anguish, mental injury or shock sustained by that person as a result of such bodily injury, sickness or disease."

32.   The BETA Policy defines **Economic Damages** as "financial loss and does not include damages arising from **Bodily Injury**…"

33.   The BETA Policy defines **Privacy Breach Wrongful Act** as "(a) any actual or alleged failure to safeguard or to prevent unauthorized access to or use or disclosure of any **Personal Information**, including any access, use or disclosure that exceeds authorization, (b) failure to give notification of an actual or potential unauthorized access to, or use or disclosure of, any **Personal Information**."

34.   According to the BETA Policy, "**Personal Information** includes any information defined as 'individually identifiable health information,' 'medical information,' 'personal information' or 'personally identifying information' in the Health Insurance Portability and Accountability Act of 1996 or the California Civil Code, as amended from time to time, or in any regulations adopted thereunder."

35.   The BETA Policy defines **Professional Services** to include "medical, surgical, dental or nursing or other healthcare services or treatment to a patient, including custodial care and the furnishing of food or beverages in connection with

the treatment" and "the furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances to a patient if the injury occurs after the **Member** has relinquished possession thereof."

36. Section 7, Paragraph 10D. of the BETA Policy provides that if a **Claim** involves both covered and non-covered allegations, theories of recovery or relief, BETArma shall be responsible only for that portion of the total amount that is covered.

37. Section 6 of the BETA Policy, titled "EXCLUSIONS," provides "[e]xcept as otherwise provided below, these exclusions apply regardless of whether any other cause, act, error, omission, event, material or product contributes concurrently or in any sequence to a Claimant's injury or damage."

38. Exclusion 1 of the BETA Policy states:

> This Contract does not apply to any **Claim** for damages arising out of the breach of any contract or agreement or liability assumed by the **Member** under any contract or agreement, except that:
>
> ***
>
> B. this exclusion does not apply…for liability arising out of a written agreement entered into before the **Occurrence** or offense under which the **Member** assumed the tort liability of others for injury to a third person or entity caused by the **Member's** negligence or other fault; and
>
> C. this exclusion does not apply…for liability the **Member** would have had in the absence of the contract or agreement.

39.    Exclusion 5 of the BETA Policy states:

This Contract does not apply to any injury that is expected or intended by the **Member**.  This exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

40.    Exclusion 6 of the BETA Policy states:

Except for the defense of criminal charges as provided in Section 2.6, this Contract does not apply to any **Claim** arising from or brought about or contributed to by the **Member's** dishonest, fraudulent, criminal or malicious acts or omission, or to acts or omissions that an insurer could not indemnify under California Insurance Code Section 533.

41.    Exclusion 9 of the BETA Policy states:

This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly, on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of any federal, state or other statutory or common law (including but not limited to the Cartwright Act, California Business & Professions Code § 16600, et. seq., the Unfair Practices Act, Business & Professions Code § 17000, et. seq.,  and the Unfair Competition Act of the State of California, Business & Professions Code §§ 17200, et. seq. and 17500, et. seq. and Title 15 of the United States Code, all as they may be amended from time to time) that prohibits the unlawful restraint of trade, business or profession, except any

liability arising from actions brought against the **Member**
by any person or persons alleging the improper or
unlawful denial or restriction of medical staff privileges or
alleging the **Member's** failure to act upon any application
for such privileges.

42.  Exclusion 12 of the BETA Policy states:
BETArma will not pay any punitive or exemplary
damages, fines, penalties, taxes, trebled damages or any
other measure of damages exceeding actual compensatory
damages.

43.  Exclusion 16 of the BETA Policy states:
BETArma will not pay for equitable remedies or the costs
of complying with equitable remedies, governmental
requests, directives, orders or recommendations.
(Examples of equitable remedies include injunctions,
restitution, disgorgement, declaratory relief, constructive
trust, and rescission, reformation or specific performance
of a contract.)

44.  Exclusion 24 of the BETA Policy states:
This Contract does not apply to any damages directly or
indirectly arising out of, resulting from or in any way
related to any **Privacy Breach Wrongful Act**.

45.  Section 7 of the BETA Policy provides that "[i]f BETArma pays any
amount in settlement or satisfaction of any **Claim**…for which BETArma has no
liability under this Contract, the **Member** shall reimburse BETArma for such
amounts within thirty (30) calendar days of BETArma's request."

///

///

1        **FACTUAL ALLEGATIONS**

2   **A.    Defendants Were Aware Of Tyndall's Wrongful Conduct Prior To**

3          **The July 1, 2017 Effective Date Of The Underwriters Policies**

4          46.    On June 6, 2016, Cindy Gilbert, Nursing Supervisor for USC

5   Engemann Student Health Center, filed a complaint against Tyndall with USC's

6   Office of Equity and Diversity ("OED") concerning conduct and comments she

7   believed constituted sexual harassment.  USC launched an investigation, during

8   which two patients, two nurses and six medical assistants also made similar

9   complaints.

10         47.    On June 15, 2016, OED conducted interviews with nurses and medical

11  assistants from the Student Health Center who were present during Tyndall's patient

12  examinations.  These witnesses advised that Tyndall made inappropriate comments

13  during examinations that upset patients and resulted in complaints.  Additionally,

14  medical assistants who were present during Tyndall's patient examinations reported

15  concerns about the way he conducted pelvic examinations, including his practice of

16  digital insertion into the patents' vaginas prior to insertion of a speculum.

17         48.    During this time period, several photographs of female patients'

18  genitals were located in Tyndall's office at the Student Health Center, and USC

19  placed him on paid administrative leave on or about June 17, 2016, pending OED's

20  investigation.

21         49.    According to documentation from the United States Department of

22  Education, Office for Civil Rights ("OCR"), USC's 2016 investigations into the

23  complaints and allegations against Tyndall were coordinated by USC's Office of

24  General Counsel.

25         50.    As part of its investigation, USC retained outside medical review firm,

26  MDReview, to analyze whether Tyndall's practices constituted the standard of care.

27  On or about November 30, 2016, MDReview issued its report of its findings to

28  USC.  MDReview concluded that several of Tyndall's practices were not within the

standard of care and not medically credible.  Furthermore, according to MDReview, Tyndall "repeatedly exhibits behavior that is unprofessional, inappropriate, and/or unusual."  MDReview's greatest concerns were "the issues with infection control and inadequate or inappropriate breast, pelvic and colposcopic exams."  MDReview also expressed concern that Tyndall had used a commercial processing lab in New York, which may have been used to develop film of certain patients' genitalia.

51.     USC's 2016 investigation also documented that Tyndall had been the subject of a prior OED investigation.  Specifically, in June 2013, Dr. Larry Neinstein, then-Executive Director of the Student Health Center, reported to OED that several staff members and a student alleged that Tyndall made inappropriate comments or otherwise made them feel uncomfortable.  Dr. Neinstein reported that: (1) in 2002, Tyndall insisted that medical assistants remain on the other side of the curtain while he examined patients; (2) in 2009, Tyndall complimented a student on her pubic hair, and (3) in 2010, a student came forward complaining that Tyndall performed a pelvic exam on her in 2003 without wearing gloves.

52.     On January 31, 2017, OED issued a report of its investigation, including its finding that Tyndall violated USC's sexual harassment policy.  USC did not disclose OED's findings to Underwriters.

53.     USC terminated Tyndall's employment on May 16, 2017, and pursuant to a subsequent separation agreement, Tyndall's employment ended effective June 30, 2017.  USC did not disclose Tyndall's termination or the reasons for it to Underwriters or the public at that time.

54.     On March 9, 2018, over eight months after Tyndall's termination from USC, USC filed a complaint regarding Tyndall with the Medical Board of California, alleging professional misconduct.

55.     On May 15, 2018, USC issued its first public statements regarding Tyndall's alleged misconduct, admitting that in June 2016, OED had launched an investigation into Tyndall's alleged misconduct.

56.     On June 11, 2018, OCR announced that it was launching an investigation into USC's handling of reports of Tyndall's alleged misconduct going back to 1990, which were not fully investigated by USC until spring 2016 and not disclosed to OCR during an earlier investigation.

57.     On February 27, 2020, OCR announced the results of its investigation and issued a Letter of Finding.  OCR concluded that USC systematically failed at multiple points in time and at multiple levels of responsibility to respond promptly and effectively to notices of the alleged sexual harassment of patients by Tyndall, and that USC's failure may have allowed female students to be subjected to continuing sex discrimination.

58.     On June 26, 2019, Tyndall was arrested and charged in the California Superior Court for the County of Los Angeles with multiple felony counts of sexual assault and battery, based on allegations made by several women.  Tyndall pled not guilty and the criminal action is pending.

59.     Prior to USC's first public statements on May 15, 2018 regarding Tyndall's alleged misconduct, USC had not informed Underwriters of any complaints, investigations or reports involving Tyndall's alleged misconduct.  Nor did USC inform Underwriters that it placed Tyndall on administrative leave in June 2016 or that it terminated him in June 2017.

60.     Upon information and belief, and at all times relevant hereto, Defendants believed that they would be sued by Tyndall's former patients if the complaints and allegations of Tyndall's sexual abuse and other offensive conduct were disclosed to the public.

61.     During the underwriting for USC's excess liability coverage with Underwriters for the 2017-2018 policy period, USC concealed from Underwriters the patient and employee complaints and allegations regarding Tyndall's alleged misconduct, including complaints of sexual harassment and racial discrimination.

62.     USC knew or should have known or believed that the complaints and allegations made against Tyndall would be material to all the insurers from which USC sought healthcare professional liability coverage, including Underwriters.

63.     USC further knew that it was obtaining healthcare liability coverage on a claims-made and reported basis and therefore prior incidents that would cause a reasonable person to believe that a claim might be made against Defendants would be relevant to an insurer evaluating the risk that a claim would be presented in the 2017-2018 policy period.

64.     Had USC disclosed its knowledge of the facts and circumstances regarding Tyndall's alleged misconduct described above, Underwriters would not have provided insurance to Defendants on the same terms and would have expressly excluded from coverage claims arising out of Tyndall's alleged misconduct.

65.     The patient and employee complaints and allegations made against Tyndall were material to the risk that Underwriters were insuring in providing the excess healthcare professional liability coverage.

66.     Because USC concealed and did not disclose to the public any information concerning the patient and employee complaints and allegations made against Tyndall until May 15, 2018, Underwriters could not have independently discovered the risk that the complaints and allegations made against Tyndall were likely to result in claims against Defendants.

**B.      The Underlying Lawsuits**

67.     Several lawsuits against USC and Tyndall have been filed in the California Superior Court for the County of Los Angeles and in the United States District Court for the Central District of California.

**1.      State Court Lawsuits**

68.     The state-court plaintiffs have asserted various causes of action, including: sex discrimination (Unruh Civil Rights Act, Bane Act, Ralph Act, Title IX), sexual abuse and harassment (Cal. Ed. Code § 220, Cal. Civ. Code §§ 52, 1708,

1   Title IX), battery, false imprisonment, gender violence, (Civ. Code § 52.4),

2   intentional infliction of emotional distress, negligent infliction of emotional distress,

3   negligence, gross negligence, negligent hiring, negligent training, negligent

4   supervision, negligent retention, failure to warn, unfair business practices (Bus. &

5   Prof. Code § 17200 *et seq*.), intentional misrepresentation, negligent

6   misrepresentation, constructive fraud and concealment, breach of fiduciary duty,

7   ratification, and aiding and abetting.

8          69.   The state-court plaintiffs seek general damages for pain and suffering,

9   special damages (*e.g.*, lost wages, loss of earning capacity and medical expenses),

10  punitive and exemplary damages, statutory damages, attorney's fees, costs, interest,

11  restitution, declaratory relief and injunctive relief.

12         70.   The state-court plaintiffs allege that Tyndall, while working at the

13  Student Health Center, used his position of trust and authority to sexually abuse

14  plaintiffs for no legitimate medical purpose and for no reason other than to satisfy

15  his own deviant sexual desires.  Plaintiffs also allege Tyndall committed acts of

16  racial discrimination against them.

17         71.   The state-court plaintiffs also allege that USC received several

18  complaints from USC students and employees regarding Tyndall's inappropriate and

19  harassing sexual behavior dating back to at least 2000, and that USC failed to

20  address those complaints, failed to take any responsive action, and failed to

21  implement safeguards to prevent future acts of unlawful sexual abuse and other

22  offenses by Tyndall.  Rather, according to plaintiffs, USC actively and deliberately

23  concealed Tyndall's sexual abuse and misconduct for years.

24         72.   The state-court plaintiffs further allege that in or about June 2016, USC

25  placed Tyndall on administrative leave, and that USC conducted an internal

26  investigation, which revealed that Tyndall acted unprofessionally and

27  inappropriately.  Plaintiffs also allege USC permitted Tyndall to resign quietly,

28  without reporting him to law enforcement or medical authorities, all to conceal

Haight

1  Tyndall's sexual abuse from the public and to protect USC's reputation and financial
2  coffers.

3     73.   The state-court plaintiffs further allege that USC-employed chaperones
4  witnessed Tyndall's sexual abuse of patients, but failed to take appropriate action.

5     74.   The state-court plaintiffs also allege that USC knew or should have
6  known that Tyndall had sexually abused students and therefore had a duty to report
7  these incidents but failed to comply with mandatory reporting laws.

8     75.   The state-court plaintiffs further allege that USC was negligent in
9  hiring and retaining Tyndall, and in failing to adequately supervise him.

10    **2.    The Federal Class Action**

11    76.   Most of the federal lawsuits were filed as putative class actions, and
12  they were consolidated as *In Re USC Student Health Center Litigation*, Case No.
13  2:18-cv-04258-SVW-GJS (the "Federal Class Action").

14    77.   The Federal Class Action plaintiffs likewise alleged that Tyndall had
15  sexually abused and harassed them while he was working for USC at the Student
16  Health Center.

17    78.   The Federal Class Action plaintiffs also alleged that USC received
18  complaints concerning Tyndall over the years but failed to take appropriate action
19  and deliberately concealed his conduct.

20    79.   The operative complaint in the Federal Class Action included several
21  causes of action against USC, its Trustees and Tyndall, including causes of action
22  for negligent supervision and retention, Title IX, sexual abuse & harassment (Cal.
23  Ed. Code § 220), Equity in Higher Education Act § 66250, gender violence (Civ.
24  Code § 52.4), gross negligence, invasion of privacy, negligent failure to warn, train
25  or educate, civil battery, intentional infliction of emotional distress, negligent
26  infliction of emotional distress and ratification.

27  ///
28  ///

Haight

80. The Federal Class Action plaintiffs sought several remedies, including compensatory damages, punitive damages, attorney's fees and costs, among other remedies.

**C. The Federal Class Action Settlement**

81. The Federal Class Action resulted in an opt-out settlement on behalf of a nationwide class. The Court certified the settlement class and approved the settlement by order entered on February 25, 2020. Under the terms of the Federal Settlement, USC agreed to pay the settlement class $215,000,000 plus attorney's fees capped at $25,000,000.

82. In March 2020, BETArma paid the BETA Policy's per claim limit of $20,000,000 toward the Federal Settlement.

83. Underwriters 285 paid Defendants the $20,000,000 limit of liability of Excess Policy 285 toward the Federal Settlement, subject to a full reservation of rights, including the right to reimbursement of the policy limits.

**FIRST CLAIM FOR RELIEF**

**Declaratory Relief – The Underlying Lawsuits And The Federal Settlement Are Not Covered Claims Under The Underwriters Policies**

**(Against all Defendants)**

84. Underwriters re-allege and incorporate by reference the allegations set forth above.

85. Under the terms of the BETA Policy, which are incorporated into the Underwriters Policies, coverage under Section 2 is provided on a claims-made and reported basis. Thus, as a condition of coverage, a **Claim** against a **Member** must be first made during the policy period.

86. Under the terms of the BETA Policy, which are incorporated into the Underwriters Policies, no **Claim** shall be deemed first made during the policy period if any **Member** had knowledge prior to the effective date of the BETA Policy (*i.e.,*

Haight

July 1, 2017) of facts or circumstances that would cause a reasonable person to believe that a **Claim** might be made.

87.     As alleged above, Defendants knew before July 1, 2017 of complaints and allegations from patients and employees of Tyndall's sexual harassment and abuse, and racial discrimination.  Prior to that date, USC had already concluded that Tyndall violated USC's policies against sexual harassment and racial discrimination, and terminated his employment with USC.  Therefore, Defendants had knowledge prior to July 1, 2017 of facts or circumstances that would cause a reasonable person to believe **Claims** might be made against Defendants based on Tyndall's alleged misconduct.

88.     Thus, under the terms of the Underwriters Policies, the **Claims** against Defendants are deemed to be first made before the July 1, 2017 effective date of the BETA Policy and the Underwriters Policies, and therefore do not constitute covered **Claims** under the Underwriters Policies or the BETA Policy.

89.     Underwriters contend they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement because neither the Underlying Lawsuits nor the Federal Settlement constitutes a covered **Claim**, as Defendants had knowledge prior to July 1, 2017 of facts or circumstances that would cause a reasonable person to believe **Claims** might be made against Defendants based on Tyndall's alleged misconduct.

90.     Upon information and belief, Defendants dispute the contentions alleged above.

91.     By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

92.     Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

1  them for the Federal Settlement because neither the Underlying Lawsuits nor the

2  Federal Settlement constitutes a covered **Claim**, as Defendants had knowledge prior

3  to July 1, 2017 of facts or circumstances that would cause a reasonable person to

4  believe **Claims** might be made against Defendants based on Tyndall's alleged

5  misconduct.

## SECOND CLAIM FOR RELIEF

**Declaratory Relief – There Is No Coverage For The Underlying Lawsuits**
**Or The Federal Settlement Because The Underlying Lawsuits Do Not Seek**
**Damages Arising Out Of Professional Services**
**(Against all Defendants)**

11  93.    Underwriters re-allege and incorporate by reference the allegations set

12  forth above.

13  94.    The Underwriters Policies incorporate the BETA Policy's definition of

14  **Professional Services**, quoted above.

15  95.    Underwriters contend they do not have a duty to defend or indemnify

16  Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal

17  Settlement because the Underlying Lawsuits do not seek damages arising out of the

18  negligence in the rendering of, or failure to render, a **Professional Service**, as

19  defined in the BETA Policy and incorporated into the Underwriters Policies.

20  96.    Upon information and belief, Defendants dispute the contentions

21  alleged above.

22  97.    By reason of the foregoing, there now exists an actual, justiciable

23  controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202.

24  Declaratory relief will clarify these duties and obligations and is therefore necessary

25  to resolve this controversy.

26  98.    Underwriters seek a judicial declaration that they do not have a duty to

27  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

28  them for the Federal Settlement because the Underlying Lawsuits do not seek

damages arising out of the negligence in the rendering of, or failure to render, a **Professional Service**.

### THIRD CLAIM FOR RELIEF

**Declaratory Relief – There Is No Coverage For Defendants' Intentional Or Reckless Conduct**

**(Against all Defendants)**

99.     Underwriters re-allege and incorporate by reference the allegations set forth above.

100.     Under California statutory and common law, and the terms of the BETA Policy and the Underwriters Policies, there is no coverage for claims based on conduct that is intentional, purposeful, knowing or reckless.

101.     The Underlying Lawsuits include allegations that Defendants acted intentionally, purposefully, knowingly, recklessly and otherwise beyond mere negligence; therefore, Underwriters do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement.

102.     Upon information and belief, Defendants dispute the contentions alleged above.

103.     By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

104.     Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent the alleged injuries do not arise out of the negligence of USC, the Trustees, and/or Tyndall in the rendering of, or failure to render, **Professional Services**.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief – Insurance Code § 533 Bars Indemnity Coverage
### For The Underlying Lawsuits And The Federal Settlement
### (Against all Defendants)

105.   Underwriters re-allege and incorporate by reference the allegations set forth above.

106.   California Insurance Code § 533 provides: "An insurer is not liable for a loss caused by the willful act of the insured…"

107.   The Underwriters Policies incorporate the following BETA Policy exclusion: "[T]his Contract does not apply…to acts or omissions that an insurer could not indemnify under California Insurance Code Section 533."

108.   Underwriters contend indemnity coverage under the Underwriters Policies is excluded by operation of California Insurance Code § 533 and the BETA Policy exclusion incorporating California Insurance Code § 533 to the extent the Underlying Lawsuit plaintiffs' losses were caused by Defendants' willful acts.

109.   Upon information and belief, Defendants dispute the contentions alleged above.

110.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

111.   Underwriters seek a judicial declaration that they do not have a duty to indemnify Defendants for the Underlying Lawsuits or the Federal Settlement to the extent plaintiffs' losses were caused by Defendants' willful acts.

## FIFTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Breach Of Contract

### Or Liability Assumed By Contract

### (Against all Defendants)

112.   Underwriters re-allege and incorporate by reference the allegations set forth above.

113.   Upon information and belief, USC has undertaken a contractual obligation to defend and/or indemnify Tyndall and the Trustees.

114.   Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement under Exclusion 1 of the BETA Policy, which is incorporated into the Underwriters Policies, to the extent Defendants' actual or alleged liability arises out of the breach of any contract or agreement or liability assumed by the **Member** under any contract or agreement.

115.   Upon information and belief, Defendants dispute the contentions alleged above.

116.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

117.   Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent Defendants' actual or alleged liability arises out of the breach of any contract or agreement or liability assumed by the **Member** under any contract or agreement.

## SIXTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Expected Or Intended Injury

### (Against all Defendants)

118.   Underwriters re-allege and incorporate by reference the allegations set forth above.

119.   Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement under Exclusion 5 of the BETA Policy, which is incorporated into the Underwriters Policies, to the extent Defendants intended or expected to injure any plaintiff in the Underlying Lawsuits.

120.   Upon information and belief, Defendants dispute the contentions alleged above.

121.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

122.   Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent Defendants intended or expected to injure any plaintiff in the Underlying Lawsuits.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Dishonest, Fraudulent, Criminal

### Or Malicious Acts

### (Against all Defendants)

123.   Underwriters re-allege and incorporate by reference the allegations set forth above.

124.   Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for

the Federal Settlement under Exclusion 6 of the BETA Policy, which is incorporated into the Underwriters Policies, to the extent the actual or alleged liability of Defendants arises from, was brought about, or was contributed to by their dishonest, fraudulent, criminal or malicious acts or omissions.

125.   Upon information and belief, Defendants dispute the contentions alleged above.

126.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

127.   Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent the actual or alleged liability of Defendants arises from, was brought about, or was contributed to by their dishonest, fraudulent, criminal or malicious acts or omissions.

## EIGHTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Misconduct Ratified By USC
### (Against all Defendants)

128.   Underwriters re-allege and incorporate by reference the allegations set forth above.

129.   Plaintiffs in the Underlying Lawsuits allege that USC ratified Tyndall's misconduct, including, but not limited to, his sexual abuse and harassment, battery, sexual battery, intentional infliction of emotional distress, concealment and fraud.

130.   Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent Defendants ratified Tyndall's alleged misconduct.

1    131.    Upon information and belief, Defendants dispute the contentions
2    alleged above.

3    132.    By reason of the foregoing, there now exists an actual, justiciable
4    controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202.
5    Declaratory relief will clarify these duties and obligations and is therefore necessary
6    to resolve this controversy.

7    133.    Underwriters seek a judicial declaration that they do not have a duty to
8    defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify
9    them for the Federal Settlement to the extent Defendants ratified Tyndall's
10   misconduct.

11                    **NINTH CLAIM FOR RELIEF**
12   **Declaratory Relief – No Coverage For Unlawful Restraint Of Trade,**
13                  **Business Or Profession**
14                  **(Against all Defendants)**

15   134.    Underwriters re-allege and incorporate by reference the allegations set
16   forth above.

17   135.    Underwriters contend that they do not have a duty to defend or
18   indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for
19   the Federal Settlement under Exclusion 9 of the BETA Policy, which is incorporated
20   into the Underwriters Policies, because the actual or alleged liability of Defendants
21   is based in whole or in part or directly or indirectly on, or attributable to, arising out
22   of, resulting from, or is related to an actual or alleged violation of federal, state or
23   other statutory common laws that prohibit the unlawful restraint of trade, business or
24   profession.

25   136.    Upon information and belief, Defendants dispute the contentions
26   alleged above.

27   137.    By reason of the foregoing, there now exists an actual, justiciable
28   controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202.

Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

138.    Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement because the actual or alleged liability of Defendants is based in whole or in part or directly or indirectly on, or attributable to, arising out of, resulting from, or is related to an actual or alleged violation of federal, state or other statutory common laws that prohibit the unlawful restraint of trade, business or profession.

## TENTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Punitive Damages

### (Against all Defendants)

139.    Underwriters re-allege and incorporate by reference the allegations set forth above.

140.    Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement under Exclusion 12 of the BETA Policy, which is incorporated into the Underwriters Policies, to the extent any portion of any judgment or settlement in the Underlying Lawsuits or the Federal Settlement constitutes punitive or exemplary damages, fines, penalties, taxes, trebled damages or any other measure of damages exceeding actual compensatory damages.

141.    Upon information and belief, Defendants dispute the contentions alleged above.

142.    By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

143.    Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent any portion of any judgment or settlement in the Underlying Lawsuits or the Federal Settlement constitutes punitive or exemplary damages, fines, penalties, taxes, trebled damages or any other measure of damages exceeding actual compensatory damages.

## ELEVENTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Equitable Remedies

### (Against all Defendants)

144.    Underwriters re-allege and incorporate by reference the allegations set forth above.

145.    Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement under Exclusion 16 of the BETA Policy, which is incorporated into the Underwriters Policies, to the extent any portion of any judgment or settlement in the Underlying Lawsuits or the Federal Settlement constitutes equitable remedies or the costs of complying with equitable remedies.

146.    Upon information and belief, Defendants dispute the contentions alleged above.

147.    By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

148.    Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent any portion of any judgment or settlement in the Underlying Lawsuits or the Federal Settlement constitutes equitable remedies or the costs of complying with equitable remedies.

## **TWELFTH CLAIM FOR RELIEF**

### **Declaratory Relief – No Coverage For Breach Of Privacy**

### **(Against all Defendants)**

149.   Underwriters re-allege and incorporate by reference the allegations set forth above.

150.   Plaintiffs in the Underlying Lawsuits allege that Tyndall took photographs of their naked bodies during his examinations of them and failed to properly maintain the photographs and/or were taken for his prurient purposes.

151.   Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement under Exclusion 24 of the BETA Policy, which is incorporated into the Underwriters Policies, to the extent the damages sought directly or indirectly arise out of, result from, or in any way relate to any actual or alleged **Privacy Breach Wrongful Act**.

152.   Upon information and belief, Defendants, and each of them, dispute the contentions alleged above.

153.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

154.   Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent the damages sought directly or indirectly arise out of, result from, or in any way relate to any actual or alleged **Privacy Breach Wrongful Act**.

**THIRTEENTH CLAIM FOR RELIEF**

**Declaratory Relief –  Other Insurance**

**(Against all Defendants)**

155.   Underwriters re-allege and incorporate by reference the allegations set forth above.

156.   Underwriters contend that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent the Defendants have other insurance as defined by Section 7, Paragraph 14.B of the BETA Policy, which is incorporated into the Underwriters Policies.

157.   Upon information and belief, Defendants dispute the contentions alleged above.

158.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

159.   Underwriters seek a judicial declaration that they do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent the Defendants have other insurance as defined by Section 7, Paragraph 14.B of the BETA Policy.

## FOURTEENTH CLAIM FOR RELIEF

**Declaratory Relief – All Claims Against Defendants Constitute A Single Claim (Against all Defendants)**

160.   Underwriters re-allege and incorporate by reference the allegations set forth above.

161.   There may be additional lawsuits that have been filed or will be filed in state and/or federal court based on Tyndall's alleged misconduct described above.

162.   Underwriters contend that any claim based in whole or in part on Tyndall's alleged misconduct, including the Underlying Lawsuits, the Federal Settlement, and any current or future lawsuit or claim against Defendants constitutes a single **Claim** under the terms of the BETA Policy, which are incorporated into the Underwriters Policies and state in relevant part that: "[t]wo or more **Claims** arising out of a single **Occurrence** or an act, error, omission or offense or a series of related **Occurrences**, acts, errors, omissions or offenses shall be treated as a single **Claim**. **Occurrences**, acts, errors, omissions and offenses are related if they share a causal connection or have as a common nexus any event or transaction or series of events or transactions. When two or more **Claims** are treated as a single **Claim**, the single **Claim** shall be considered first made when the earliest of the **Claims** is first made."

163.   Upon information and belief, Defendants, and each of them, dispute the contentions alleged above.

164.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

165.   Underwriters seek a judicial declaration that any claim based in whole or in part on Tyndall's alleged misconduct, including the Underlying Lawsuits, the Federal Settlement, and any current or future lawsuit or claim against Defendants, constitutes a single **Claim** under the terms of the BETA Policy and the Underwriters Policies.

## FIFTEENTH CLAIM FOR RELIEF

### Declaratory Relief – No Coverage For Tier One Settlement
### (Against all Defendants)

166.   Underwriters re-allege and incorporate by reference the allegations set forth above.

167.   Underwriters contend that they do not have a duty to indemnify Defendants for the Tier One compensation paid in the Federal Settlement because those payments do not arise out of the negligence of Defendants in the rendering of, or failure to render, **Professional Services** or because the persons receiving Tier One compensation did not have **Bodily Injury** or otherwise present **Claims** within the scope of the BETA Policy's insuring clauses, which are incorporated into the Underwriters Policies.

168.   Upon information and belief, Defendants dispute the contentions alleged above.

169.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

170.   Underwriters seek a judicial declaration that they do not have a duty to indemnify Defendants for the Tier One compensation paid in the Federal Settlement because those payments do not arise out of the negligence of Defendants in the rendering of, or failure to render, **Professional Services** or because the persons receiving Tier One compensation did not have **Bodily Injury** or otherwise present

1 **Claims** within the scope of the BETA Policy's insuring clauses, which are
2 incorporated into the Underwriters Policies.

3 ### SIXTEENTH CLAIM FOR RELIEF

4 **Declaratory Relief – No Coverage For Claims Arising Out Of Defendants'**
5 **Conduct Outside The Course And Scope Of Their Employment With USC**
6 **(Against all Defendants)**

7      171.   Underwriters re-allege and incorporate by reference the allegations set
8 forth above.

9      172.   Underwriters contend that they do not have a duty to defend or
10 indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for
11 the Federal Settlement to the extent the Trustees and/or Tyndall were not acting
12 within the course and scope their duties for USC and/or did not qualify as
13 **Members** under the BETA Policy or the Underwriters Policies.

14      173.   Upon information and belief, Defendants dispute the contentions
15 alleged above.

16      174.   By reason of the foregoing, there now exists an actual, justiciable
17 controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202.
18 Declaratory relief will clarify these duties and obligations and is therefore necessary
19 to resolve this controversy.

20      175.   Underwriters seek a judicial declaration that they do not have a duty to
21 defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify
22 them for the Federal Settlement to the extent the Trustees and/or Tyndall were not
23 acting within the course and scope of their duties for USC and/or did not qualify as
24 **Members** under the BETA Policy or the Underwriters Policies.

25 / / /
26 / / /
27 / / /
28 / / /

## SEVENTEENTH CLAIM FOR RELIEF

**Declaratory Relief – Underwriters 285 Is Entitled To Recover Settlement**

**Proceeds**

**(Against all Defendants)**

176.   Underwriters 285 re-alleges and incorporates by reference the allegations set forth above.

177.   Underwriters 285 paid the limits of Excess Policy 285 subject to a full reservation of rights under the policy and the law, including the right to recover all amounts that it does not have a duty to pay.

178.   Underwriters 285 contends that it is entitled to recover all amounts it paid in the event an insurer below Underwriters 285 recoups or recovers amounts it paid toward the underlying limits.

179.   Upon information and belief, Defendants dispute the contentions alleged above.

180.   By reason of the foregoing, there now exists an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201 and 2202. Declaratory relief will clarify these duties and obligations and is therefore necessary to resolve this controversy.

181.   Underwriters 285 seeks a judicial declaration that it is entitled to recover all amounts it paid in the event an insurer below Underwriters 285 recoups or recovers amounts it paid toward the underlying limits.

## EIGHTEENTH CLAIM FOR RELIEF

**Reimbursement**

**(Against all Defendants)**

182.   Underwriters 285 re-alleges and incorporates by reference the allegations set forth above.

183.   Pursuant to the terms of Excess Policy 285, the BETA Policy and California law, Underwriters 285 is entitled to reimbursement of its $20,000,000

payment toward the Federal Settlement under Excess Policy 285, which it paid under a full reservation of rights, including the right to reimbursement of non-covered claims.  As alleged hereinabove, Underwriters 285 has no indemnity obligation under Excess Policy 285 for the Federal Settlement because neither the Federal Settlement nor the lawsuits from which the settlement derived constitutes a covered **Claim** under Excess Policy 285.

<h1 style="text-align:center">NINETEENTH CLAIM FOR RELIEF</h1>

<b>Rescission</b>

<b>(Against all Defendants)</b>

184.   Underwriters re-allege and incorporate by reference the allegations set forth above.

185.   When USC sought excess coverage for the 2017-2018 policy period from Underwriters, USC had already completed its investigation of the patient and USC-employee complaints and allegations against Tyndall and had found Tyndall violated USC's racial and sexual harassment policies.

186.   Upon information and belief, and at all times relevant hereto, USC believed that if the complaints and allegations of improper medical care and sexual and racial harassment were to be disclosed to the public, USC and Tyndall would be sued by former patients.

187.   When USC sought excess coverage for the 2017-2018 policy period from Underwriters, USC concealed and failed to disclose the patient and employee complaints and allegations against Tyndall regarding his improper medical care and sexual and racial harassment in violation of Insurance Code §§ 330 and 332.

188.   USC had a duty to disclose to Underwriters facts material to the risk USC asked Underwriters to insure when it sought coverage.

189.   The prior patient and employee complaints and allegations regarding Tyndall's alleged misconduct, including but not limited to complaints and

allegations of Tyndall's sexual abuse of USC students, were material to the risk USC was asking Underwriters to insure under the Underwriters Policies.

190.   USC knew or should have known or believed the prior patient and employee complaints and allegations regarding Tyndall's alleged misconduct, including but not limited to complaints and allegations of Tyndall's sexual abuse of USC students, were material to the risk USC was asking Underwriters to insure under the Underwriters Policies.

191.   Upon information and belief, USC knew that is was applying for healthcare professional liability coverage on a claims-made basis and therefore the incidents that occurred in previous years would be relevant to an insurer that was evaluating the risk that a claim would be made during the 2017-2018 policy period.

192.   Underwriters had no reason to believe USC concealed any facts material to the risk USC asked Underwriters to insure when USC obtained the Underwriters Policies.

193.   Because USC concealed and did not disclose any information concerning the patient and employee complaints and allegations made against Tyndall to the public until May 15, 2018, Underwriters could not have independently discovered the risk that the complaints and allegations made against Tyndall were likely to result in claims against Defendants.

194.   Had Underwriters known of the patient and employee complaints and allegations and USC's investigation and findings therefrom, Underwriters would not have provided insurance to Defendants on the same terms and would have expressly excluded from coverage claims arising out of Tyndall's alleged misconduct.

195.   Underwriters are entitled to rescission of Excess Policy 285 and Excess Policy 286 pursuant to Insurance Code § 330 *et. seq.* and/or common law.

## **PRAYER FOR RELIEF**

WHEREFORE, Underwriters pray for judgment against Defendants as follows:

1.    For a judicial declaration that Underwriters do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement because neither the Underlying Lawsuits nor the Federal Settlement constitutes a covered **Claim**, as Defendants had knowledge prior to July 1, 2017 of facts or circumstances that would cause a reasonable person to believe a **Claim** might be made against Defendants based on Tyndall's alleged misconduct.

2.    For a judicial declaration that Underwriters do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement because the Underlying Lawsuits do not seek damages arising out of the negligence in the rendering of, or failure to render, a **Professional Service**.

3.    For a judicial declaration that Underwriters do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent the alleged injuries do not arise out of the negligence of USC, the Trustees, and/or Tyndall in the rendering of, or failure to render, **Professional Services**.

4.    For a judicial declaration that Underwriters do not have a duty to indemnify Defendants for the Underlying Lawsuits or the Federal Settlement to the extent the underlying plaintiffs' losses were caused by Defendants' willful acts.

5.    For a judicial declaration that Underwriters do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify them for the Federal Settlement to the extent Defendants' actual or alleged liability arises out of the breach of any contract or agreement or liability assumed by the **Member** under any contract or agreement.

6.    For a judicial declaration that Underwriters do not have a duty to defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

1  them for the Federal Settlement to the extent Defendants intended or expected to

2  injure any plaintiff in the Underlying Lawsuits.

3        7.    For a judicial declaration that Underwriters do not have a duty to

4  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

5  them for the Federal Settlement to the extent the actual or alleged liability of

6  Defendants arises from, was brought about, or was contributed to by their dishonest,

7  fraudulent, criminal or malicious acts or omissions.

8        8.    For a judicial declaration that Underwriters do not have a duty to

9  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

10  them for the Federal Settlement to the extent Defendants ratified Tyndall's

11  misconduct.

12        9.    For a judicial declaration that Underwriters do not have a duty to

13  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

14  them for the Federal Settlement because the actual or alleged liability of Defendants

15  is based in whole or in part or directly or indirectly on, or attributable to, arising out

16  of, resulting from, or is related to an actual or alleged violation of federal, state or

17  other statutory common laws that prohibit the unlawful restraint of trade, business or

18  profession.

19       10.    For a judicial declaration that Underwriters do not have a duty to

20  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

21  them for the Federal Settlement to the extent any portion of any judgment or

22  settlement in the Underlying Lawsuits or the Federal Settlement constitutes punitive

23  or exemplary damages, fines, penalties, taxes, trebled damages or any other measure

24  of damages exceeding actual compensatory damages.

25       11.    For a judicial declaration that Underwriters do not have a duty to

26  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify

27  them for the Federal Settlement to the extent any portion of any judgment or

28

Haight

1  settlement in the Underlying Lawsuits or the Federal Settlement constitutes
2  equitable remedies or the costs of complying with equitable remedies.

3       12.    For a judicial declaration that Underwriters do not have a duty to
4  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify
5  them for the Federal Settlement to the extent the damages sought directly or
6  indirectly arise out of, result from, or in any way relate to any actual or alleged
7  **Privacy Breach Wrongful Act**.

8       13.    For a judicial declaration that Underwriters do not have a duty to
9  defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify
10 them for the Federal Settlement to the extent the Defendants have other insurance as
11 defined by Section 7, Paragraph 14.B of the BETA Policy.

12      14.    For a judicial declaration that any claim based in whole or in part on
13 Tyndall's alleged misconduct, including the Underlying Lawsuits, the Federal
14 Settlement, and any current or future lawsuit or claim against Defendants,
15 constitutes a single **Claim** under the terms of the BETA Policy and the Underwriters
16 Policies.

17      15.    For a judicial declaration that Underwriters do not have a duty to
18 indemnify Defendants for the Tier One compensation paid in the Federal Settlement
19 because those payments do not arise out of the negligence of Defendants in the
20 rendering of, or failure to render, **Professional Services** or because the persons
21 receiving Tier One compensation did not have **Bodily Injury** or otherwise present
22 **Claims** within the scope of the BETA Policy's insuring clauses, which are
23 incorporated into the Underwriters Policies.

24      16.    For a judicial declaration that Underwriters do not have a duty to
25 defend or indemnify Defendants in the Underlying Lawsuits or a duty to indemnify
26 them for the Federal Settlement to the extent the Trustees and/or Tyndall were not
27 acting within the course and scope of their duties for USC and/or did not qualify as
28 **Members** under the BETA Policy or the Underwriters Policies.

1     17.    For a judicial declaration that Underwriters 285 is entitled to recover all

2  amounts it paid in the event an insurer below Underwriters 285 recoups or recovers

3  amounts it paid toward the underlying limits.

4     18.    For reimbursement from Defendants of the $20,000,000 that

5  Underwriters 285 paid toward to Federal Settlement under a full reservation of

6  rights.

7     19.    For rescission of Excess Policy 285 and Excess Policy 286.

8     20.    Underwriters' costs of suit incurred in this action.

9     21.    For pre- and post-judgment interest.

10    22.    For such other and further relief as the Court deems proper.

11

12  Dated: May 10, 2022          HAIGHT BROWN & BONESTEEL LLP

13

14                           By:

15                           Denis J. Moriarty

16                           Gary L. LaHendro

                              Attorneys for Plaintiffs, CERTAIN

17                           UNDERWRITERS AT LLOYD'S,

18                           LONDON, SUBSCRIBING TO FOLLOW
                              FORM EXCESS LIABILITY POLICY

19                           NO. PH1706285; AND CERTAIN

20                           UNDERWRITERS AT LLOYD'S,
                              LONDON, SUBSCRIBING TO FOLLOW

21                           FORM EXCESS LIABILITY POLICY

22                           NO. PH1706286

23

24

25

26

27

28